# Echols *et al.* v. Peurrung Bros. & Co.

*Bill in Equity to set aside Conveyance as Fraudulent.*

1. *Voluntary conveyance made with actual intent to defraud, void both as to existing and subsequent creditors.*—A voluntary conveyance made by the donor with actual intent to hinder, delay or defraud creditors, existing at the time, or those whose demands may thereafter accrue, is void as against his creditors, existing or subsequent.

2. *Conveyance actually fraudulent assailable by subsequent creditors though they had notice thereof at creation of debt.*—Notice to a subsequent creditor, at the time of creation of his debt, of a prior convey-

[Echols *et al.* v. Peurrung Bros. & Co.]

ance made in fraud of creditors, will not affect his right to have the conveyance set aside.

3. *Sufficiency of averments in bill by subsequent creditor to annull fraudulent conveyance.*—In a bill by subsequent creditors to set aside a conveyance as in fraud of creditors, allegations that at and before its execution the grantor was a member of a partnership which was indebted in a certain sum to a certain creditor, and had been for more than 60 days; that the conveyance was voluntary, and without consideration, and for the purpose of hindering and defrauding the firm's creditors; and that the grantor then contemplated the incurring by the firm of the indebtedness to complainants—are sufficient averments of fraud.

APPEAL from the chancery court of Madison.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by the appellees against the appellants, A. Ewing Echols and his wife, on December 19, 1892. Its purpose was to set aside as fraudulent and void two deeds, which were executed by A. Ewing Echols to his wife and co-defendant, Daisy Echols, on June 1, 1893, and June 10, 1893. Both of said deeds were filed for record in the probate court of Madison county on July 3, 1892. The averments of the bill are sufficiently stated in the opinion.

The respondents demurred to the bill on the following grounds: "1st. Because said bill shows on its face that said complainants became creditors of said firm of Echols & Sheffey subsequent to and with notice of the execution of said deeds, which are sought by said bill and amendment to be avoided and set aside. 2d. Because it is shown in and by said bill and amendment thereto that said complainants had notice of said conveyances, which are sought to be avoided and set aside, by the registration thereof, in the office of the probate judge of Madison county, Alabama, prior to the creation of complainant's alleged debts against said firm. 3d. Because said bill, as amended, shows that said complainants had such notice of said conveyances prior to the contraction of said indebtedness, as to put them on inquiry, and because the records of said deeds was notice sufficient to charge them that said conveyances had been made. 4th. Said bill, as amended, is without equity and the defendants move to dismiss said bill as amended."

On the submission of the cause upon the demurrers,

[Echols *et al.* v. Peurrung Bros. & Co.]

the chancellor decreed that the same were not well taken and overruled them. The respondents appeal from this decree, and assign the same as error.

HUMES, SHEFFEY & SPEAKE, for the appellants.—1st. The filing of the conveyances for record on July 3d, 1893, operated as constructive notice to everybody that the lands described had ceased to be the property of Ewing Echols, and became the property of his wife, and the complainants were chargeable by law with notice; they could not, therefore, look to that land as a basis of giving credit for goods subsequently furnished the firm of Echols & Sheffey. As a general rule a subsequent creditor who acquires his claim with knowledge or notice of the conveyance sought to be annulled, cannot attack it as fraudulent.—Wait on Fraud, Conv., (1884), p. 164, § 106; *Lehmberg v. Biberstein*, 51 Texas, 457; *Monroe v. Smith*, 79 Pa. St., 459; *Herring v. Richards*, 3 Fed. Rep., 443; *Knight v. Forward*, 63 Barb. (N. Y.), 311; *Lewis v. Castleman*, 27 Texas, 407; 52 Barb. (N. Y.), 39; *Sledge v. Obenchain*, 58 Miss., 670; *Kane v. Roberts*, 40 Md., 594; *Williams v. Banks*, 11 Md., 198; *Sheppard v. Thomas*, 24 Kansas, 780; *Kirksey v. Snedecor*, 60 Ala. 192. The deeds had been recorded one month and fifteen days before any of the creditors mentioned in the bill ever began to credit the firm of Echols & Sheffey at all. There was no unusual or suspicious delay in putting the deeds of record,—they were filed for record as promptly as is customary; there is nothing fraudulent on the face of the deeds themselves; and there is no averment or allegation that A. Ewing Echols still retained possession of the land after the execution of the conveyances; and the presumption is that Daisy Echols took immediate possession. Besides after the registration of the deeds the possession of the husband would be deemed in law the possession of the wife.—3 Brickell's Digest, p. 304, § 117.

The bill is without equity for the reasons heretofore stated, as well as for the following:

In the bill the facts constituting the alleged fraud are not sufficiently set out, and the facts alleged to show a fraudulent intent and purpose are as consistent with an honest purpose and fair dealing as with a fraudulent design and *mala fides*.—*F. P. F. Co. v. F. P. C. & I. Co.*, 96

[Echols *et al.* v. Peurrung Bros. & Co.]

Ala. 472; *Curran v. Olmstead*, 14 So. Rep., 398. Actual fraud must be averred in order to sustain a bill filed by a subsequent creditor to set aside a voluntary conveyance for fraud.—*Dickson v. McLarney*, 97 Ala. 383; *Bluthenthal v. Magnus*, 97 Ala. 530.

In Wallace v. Penfield, it appeared that the debtor, who was somewhat indebted at the time, made a voluntary settlement upon his wife, by causing the title to the lands in question to be taken in her name, with the intention of immediately building and improving the land and using it as a permanent residence for himself and family. It was shown that, when the settlement was effected, and during the period the land was being built upon and improved, the debtor had property which creditors could have reached, exceeding in value his indebtedness by several thousand dollars, and was engaged in an active business with fair prospects. *All the creditors whose claims existed at the date of the settlement, or during the period when the debtor was making expenditures for improvements, had been fully paid and discharged. The plaintiff's claim accrued subsequently.* The Supreme Court of the United States very properly held that *these facts were entirely consistent with an honest purpose to deal fairly with any creditors the debtors then had, or might thereafter have in the ordinary course of his business, and that neither the conveyance to his wife, nor the withdrawal of the husband's means from his business for the purpose of improving the land settled upon the wife, had the effect to hinder or defraud his then existing or subsequent creditors.*—Wait on Fraud, Conv., § 99, pp. 153–4; *Wallace v. Penfield*, 106 U. S. 260; *Graham v. Railroad Co.*, 102 U. S. 148.

S. S. PLEASANTS, for the appellee.—It is familiar law that a conveyance may be set aside by subsequent creditors as well as by antecedent or existing ones, if they show actual fraud in the execution of the conveyance attacked.—8 Amer. & Eng. Ency. of Law, 761–2.

The bill alleges actual fraud and besides that the conveyances were made with a view and in contemplation of said firm's creating the indebtedness to complainant and other debts.

It is well settled law in Alabama that a voluntary conveyance may be impeached for fraud by subsequent as well as antecedent creditors, the only difference in the

[Echols *et al.* v. Peurrung Bros. & Co.]

two classes of creditors being that the conveyance when attacked by antecedent creditors is presumed to be fraudulent while as to subsequent creditors the burden is upon them to prove fraud. And that fraud may be shown by subsequent creditors by showing that the fraudulent grantor had existing creditors and debts outstanding when the conveyance attacked was made.—*Miller v. Thompson*, 8 Porter 196; *Gilliland v. Fenn*, 90 Ala. 233. This seems to be the universal rule in the United States. *Day v. Cooley*, 118 Mass. 627; *Claflin v. Mess*, 30 N. J. Eq. 211; *Reade v. Livingston*, 3 Johns. Ch. 600; *Kirksey v. Snedecor*, 60 Ala. 192; *Seals v. Robinson*, 75 Ala. 369.

The mere fact that the conveyances attacked were recorded before the accrual of the indebtedness—the bill alleging actual fraud—can form no ground of demurrer. —*Burdick v. Gill & Wife*, 7 Federal Rep. 668; *Seals v. Pheiffer & Co.*, 77 Ala. 278; Bump on Fraudulent Conveyances, page 624; *Seals v. Robinson*, 75 Ala. 363.

HEAD, J.—We are of opinion that the demurrer to the bill was properly overruled. It has been the law of this State announced in our decisions since early in the State's history that a voluntary conveyance made by the donor with actual intent to hinder, delay or defraud creditors, existing at the time, or those whose demands may thereafter accrue, is void as against his creditors, existing or subsequent. This principle is conceded by respondent's counsel, but it is contended that the rule does not apply in favor of the subsequent creditor if when he extended the credit to the donor, he had actual or constructive notice of the existence of the conveyance. The bill alleges the want of such actual notice on the part of complainants, but alleges that the deeds sought to be avoided by them as fraudulent, were recorded prior to the extension of the credit. It will thus be noticed that the proposition of the respondent narrows itself to this, that the constructive notice, which the statute accords to registration, of the mere existence *of the deed* is sufficient to deprive the subsequent creditor of the right to assail the deed as fraudulent, excluding all necessity for notice on the part of the creditor, when the debt was contracted, that the deed was executed with the actual intent to defraud creditors. In other words, the propo-

sition is, either that the world must take notice, from the moment of registration, not only that such a deed has been executed, but that it was infected with an actual intent to defraud creditors; or that, to entitle a subsequent creditor to set aside a conveyance as fraudulent, it must appear that the debt was contracted solely in faith and reliance upon the property which the debtor then owned and held the title to; whereby, if he, the creditor, had notice that the legal title, as between the debtor and his donee, to a particular property had been conveyed to the donee, he, the creditor, cannot be said to have extended credit in reliance upon that property; wherefore, he has no rights in respect of that property, although, in point of fact it may be, that he did not learn of the fraudulent character of the conveyance until after the credit was extended.    We think these contentions are opposed to the law as it is understood in this State. A fraudulent conveyance is totally void, except as between the grantor and grantee.    It is the same as if it had never been made.    It may be set aside either at law or in equity, and this, upon the principle that, except as to the grantee, the fraud so vitiates it that the title does not pass.    As to all who deal with the grantor either as creditors or purchasers the title is in the grantor, and the property subject, in the same way, as if this title was not clouded by the conveyance.    If the creditor's demand was contracted without notice of the fraud, it would seem, upon clear principles, he should not be precluded from subjecting the property, upon subsequent discovery of the fraud.    If he actually knew of the fraudulent character of the conveyance, he thereby knew of its utter invalidity, and the liability of the property to the payment of all debts of the grantor, existing or subsequent; he knew that the property was held in trust by the donee, for any and all creditors of the grantor, and the donee would not, therefore, be heard to say that the debt of the subsequent creditor was not created in reliance upon the property.    The case of *Gilliland v. Fenn*, 90 Ala. 230, which places creditors and purchasers in the same category, under the statute of frauds, is authority in point, for the principle that notice of the conveyance, on the part of the creditor or purchaser, at the time of the creation of the debt, or of the purchase, is immaterial to affect the rights of the creditor or purchaser,

and we are of opinion the principle is a sound one. The case of *Kirksey v. Snedecor*, 60 Ala. 192, cited by counsel, is not an authority to the contrary. What was said there as to Kirksey & Carpenter's claim having been contracted after the execution of the deeds, was said in the discussion of the question whether the facts were sufficient to establish the alleged fraud; and it was referred to as a circumstance going to show the deeds were not made with a fraudulent intent. This and nothing more.

It is demurred that the bill fails to allege sufficiently the facts constituting the fraud relied on to defeat the deed. The averments are, that, at and before the execution of the deeds, the donor, A. Ewing Echols, was a member of the mercantile partnership of Echols & Sheffey engaged in the retail grocery business in the city of Huntsville, Ala.; that said firm then was indebted to a named creditor in the sum of $173.40, for merchandise sold to the firm, which sum they had been owing for more than sixty days prior to the execution of said deeds; that the said deeds were executed by the donor voluntarily and without consideration, and for the purpose of hindering, delaying and defrauding the creditors of said firm of Echols & Sheffey, and that said donor then contemplated and intended that said firm should make the purchases, and incur the indebtedness which they made of, and now owe to, the complainants, and many other debts and liabilties not described, and intended to make default, and refuse to pay the same. We are unable to see how the case can be made by more specific averment of facts. The facts which constitute the fraud available to the creditor are, first, that the deeds were voluntary, and, second, that they were executed with the intent to hinder, delay or defraud creditors. These facts are alleged. The bill also shows that the donor was engaged in the mercantile business and during the summer and fall following the execution of the deeds in June and July, 1893, his firm contracted the several debts now due to the five complainants and many other debts which they had not paid at the filing of the bill on Dec. 9, 1893; and that at that time, neither firm nor either member thereof owned any property subject to execution; and that the property which Echols had conveyed to his wife in June and July preceding was worth

at least $20,000. We hold the averments of the bill sufficient. *Echols v. Orr, Scroggins & Co.*, in MSS. (17 So. Rep. 677).

Affirmed.